FILED

JUL 0 8 2005

FRED L. BORCH III, CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK



# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

GEORGIA-PACIFIC CORPORATION,

    Plaintiff,

vs.

Case No.: 5:05-cv-478-BO (1)

VON DREHLE CORPORATION,
a North Carolina corporation,
CAROLINA JANITORIAL &
MAINTENANCE SUPPLY, a North
Carolina corporation.

    Defendants.

## COMPLAINT

Georgia-Pacific Corporation ("Georgia-Pacific" or "G-P") states its Complaint against Defendant Von Drehle Corporation ("Von Drehle") and Defendant Carolina Janitorial & Maintenance Supply ("CJMS"), collectively, the "Defendants," as follows:

### INTRODUCTION

1.    This is an action by Georgia-Pacific against the Defendants for federal trademark violations, unfair competition, tortious interference with contracts and business relations, and other wrongs in connection with the Defendants' unlawful placing or "stuffing" of Von Drehle's paper towel product into Georgia-Pacific's leased and proprietary EnMotion® towel dispensers ("EnMotion® Dispensers").

2.    Georgia-Pacific's motion-operated EnMotion® Dispensers are used in public restrooms throughout the country and are an immensely popular "touchless" alternative to conventional folded towels because they allow the user to obtain a towel without touching the dispenser, which is an actual and perceived health benefit to the customers, and they offer the commercial end-user significant economic benefits. The EnMotion® Dispensers prominently

display the distinctive EnMotion® and "touchless" logos, as well as Georgia-Pacific's well-known Georgia-Pacific® and GP logo design marks.

3.     Georgia-Pacific's contracts with its distributors and end-user customers expressly provide that Georgia-Pacific retains title to, and ownership of, the EnMotion® Dispensers, and leases them to distributors and end-users subject to the express condition that only Georgia-Pacific's EnMotion® paper towels may be used in the EnMotion® Dispensers. Among other things, this condition ensures that only high quality paper towel manufactured pursuant to Georgia-Pacific's strict quality standards will be associated with the distinctive EnMotion® and "touchless" logos, as well as Georgia-Pacific's well-known Georgia-Pacific® and GP logo design marks displayed on the EnMotion® Dispensers.

4.     In contravention of Georgia-Pacific's trademark and property rights, the Defendants have engaged in an unfair or deceptive business practice of "stuffing" a different towel manufactured by Von Drehle into EnMotion® Dispensers, thus passing off Von Drehle's product as that of Georgia-Pacific and associating that different product with Georgia-Pacific's valuable trademarks. The Defendants have executed this improper business practice by intentionally targeting end-user commercial customers, such as the MudCats Stadium located in Zebulon, North Carolina (hereinafter "End-User MudCats"), that have leased EnMotion® Dispensers from Georgia-Pacific and inducing those customers to breach their agreements with Georgia-Pacific by "stuffing" Von Drehle's product into the EnMotion® Dispensers. This unfair or deceptive practice violates Georgia-Pacific's property rights and threatens Georgia-Pacific's valuable intellectual property in the form of trademarks associated with its high quality products.

5.     Defendants' illegal "stuffing" of the EnMotion® Dispensers is causing and will continue to cause irreparable harm to Georgia-Pacific. Georgia-Pacific's proprietary products and trademarks are unique and will be irreparably impaired by Defendants' acts. Further, these acts have interfered with, and will continue to interfere with, Georgia-Pacific's relationship with its distributors and customers.

6.     Georgia-Pacific brings this action for damages, an accounting, and injunctive relief against the Defendants for unfair competition, trademark infringement, and counterfeiting under the Federal Trademark Act of 1946, 15 U.S.C. §§ 1051-1127 ("Lanham Act"), tortious interference, common law unfair competition, common law conspiracy, and unfair or deceptive trade practices under North Carolina General Statute § 75-1.1, *et seq.*

## JURISDICTION

7.     This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121 because the action arises in part under 15 U.S.C. § 1125. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action between citizens of different states and the amount in controversy exceeds $75,000. This Court has jurisdiction over Georgia-Pacific's state law claims under 28 U.S.C. § 1338(b) because these claims are joined with substantial and related claims under federal trademark law, and pursuant to the doctrine of supplemental jurisdiction under 28 U.S.C. § 1367.

## VENUE

8.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because all parties do business in North Carolina, and the Defendants' wrongful conduct has occurred and continues to occur here.

## THE PARTIES

9.      Georgia-Pacific is a corporation organized under the laws of the State of Georgia, with its principal place of business in Atlanta, Georgia.

10.      Von Drehle is a corporation organized under the laws of the State of North Carolina, with its principal place of business in Hickory, North Carolina.

11.      CJMS is a corporation organized under the laws of the State of North Carolina, with its principal place of business in Raleigh, North Carolina.

## FACTS

### I.      Georgia-Pacific's Away-From-Home Restroom Products Distribution System

12.      Georgia-Pacific is a leading manufacturer and distributor of paper towels, tissues, napkins, and related products.  Georgia-Pacific products are used extensively in the restrooms of hotels, restaurants, schools, stadiums, airports, office buildings, manufacturing facilities, and other away-from-home commercial establishments.  These products include (a) consumable products, such as paper towels, tissues, soap, and air freshener gels (hereinafter "Consumables"), and (b) dispensing systems, including Dispensers or other containers for Consumables (hereinafter "Dispensing Systems").

13.      Like other paper product manufacturers and distributors, Georgia-Pacific offers distributors the choice of either (a) standard universal dispensers, or (b) leased, proprietary dispensers.

14.      Standard or universal dispensers generally are intended for facilities where the operators of the facilities do not require a high quality dispenser and towel.  Universal dispensers are designed and sold in a manner that allows them to be used with Consumables from any manufacturer.  Universal dispensers are not at issue in this litigation.

15.     Leased and Proprietary dispensers ("Leased/Proprietary Dispensers"), in contrast, generally have unique features and are branded. Leased/Proprietary Dispensers are intended for use with Consumables from a specific source.

16.     Georgia-Pacific's Leased/Proprietary Dispensers display one or more of Georgia-Pacific's registered trademarks. Georgia-Pacific's Leased/Proprietary Dispensers are intended for use only with Georgia-Pacific's high quality Consumables.

17.     The operators of commercial facilities, which are the end-users of Georgia-Pacific's products, make the decision whether to use universal dispensers or Leased/Proprietary Dispensers.

## II.     Georgia-Pacific's Leased/Proprietary Dispensers

18.     Georgia-Pacific's Leased/Proprietary Dispensers include highly regarded brands such as EnMotion®, the Cormatic® line of products, and the Series 3000™ line of products including, Max 3000®, GoRag™, and EasyNap.

19.     Hundreds of thousands of commercial facilities throughout the United States have installed Georgia-Pacific's Leased/Proprietary Dispensers in their restrooms. Millions of people use Georgia-Pacific Leased/Proprietary Dispensers and Georgia-Pacific paper towels, tissues, soap, and air freshener in these restrooms each day.

20.     Through extensive use and promotion, Georgia-Pacific Leased/Proprietary Dispensers and the Consumables dispensed by them are highly regarded for their superior quality, durability, and reliability.

21.     Georgia-Pacific's Leased/Proprietary Dispensers all bear the well-known Georgia-Pacific® mark and the GP logo mark.  The GP logo mark consists of the letters "GP" in a distinctive triangle ("GP Logo") as follows:



22.     Georgia-Pacific also owns and controls the use of trademarks – emblems, signs, trade names, identification schemes, and logos – including, but not limited to the Georgia-Pacific® and the GP Logo marks, that it uses in connection with the marketing and sale of its Consumables and Proprietary Dispensers.

23.     Georgia-Pacific owns the following registrations for the Georgia-Pacific® and GP Logo marks:

| Mark | United States Reg. No. | Products Included in Good Description |
|---|---|---|
| GEORGIA-PACIFIC | 0994319 | Paper towels and dispensers for paper towels |
| GEORGIA-PACIFIC | 1582602 | Paper napkin holders |
| GEORGIA-PACIFIC | 1585640 | Paper napkins |
| GEORGIA-PACIFIC | 1569680 | Tissue toilet seat covers |
| GEORGIA-PACIFIC | 1571984 | Dispensers for tissue toilet seat covers |
| GP Logo | 0998444 | Paper towels and dispensers for paper towels |
| GP Logo | 1584663 | Paper napkins |
| GP Logo | 1583711 | Dispensers for paper napkins |
| GP Logo | 1568368 | Tissue toilet seat covers |
| GP Logo | 1568436 | Dispensers for tissue toilet seat covers |

24.     The Georgia-Pacific® and GP Logo marks were registered more than five years ago and are in full force and effect. Thus, under 15 U.S.C. § 1065, the registrations are incontestable and constitute *prima facie* evidence of the validity of the marks. All right, title, and interest in the Georgia-Pacific® and GP Logo marks are vested in Georgia-Pacific. Georgia-Pacific has used the Georgia-Pacific® and GP Logo marks in connection with paper towels and Proprietary Dispensers for almost forty years.

25.     Georgia-Pacific has spent millions of dollars developing, marketing, and promoting the Proprietary Dispensers and Consumables sold under the Georgia-Pacific® and GP Logo marks. As a result, Georgia-Pacific has developed substantial valuable goodwill for the marks and the products that bear its marks.

## III.     Distribution of Leased/Proprietary Dispensers

26.     Georgia-Pacific's current practice is to maintain ownership of its Leased/Proprietary Dispensers. Georgia-Pacific leases it Leased/Proprietary Dispensers, including its EnMotion® Dispensers, to third party distributors ("Distributors") under lease agreements ("Dispenser Lease Agreements"). Pursuant to these agreements, the Distributors pay Georgia-Pacific an initial lease fee for each Leased/Proprietary Dispenser, and, in some instances, continuing fees during the term of the Dispenser Lease Agreement. A copy of the standard Dispenser Lease Agreement that Georgia-Pacific entered into with Welsh Paper Company, the distributor that subleased EnMotion® Dispensers to End-User MudCats, is attached hereto as Exhibit A.

27.     Georgia-Pacific, through its Distributors, enters into sublease agreements with end-user customers ("End-User Customers"), *e.g.*, the operators of hotels, restaurants, office buildings, and other commercial facilities. The End-User Customers agree to abide by the terms of the Sublease Registration Form ("Customer Agreement"), which incorporates the

Customer's Terms of Use. A copy of the standard Customer Agreement entered into by End-User MudCats is attached hereto as <u>Exhibit B</u>. As this signed form indicates, a copy of the Customer Agreement, including the "Customer's Terms of Use," was delivered to End-User Mudcats.

28.    Georgia-Pacific is a party to each Customer Agreement, which defines the rights and obligations among Georgia-Pacific, the Distributor, and the End-User Customer. Georgia-Pacific is also an intended and express third-party creditor beneficiary of each Customer Agreement. Specifically, each Customer Agreement is printed on stationary bearing the GP Logo mark, and expressly states that the leased dispensers are owned by Georgia-Pacific, and that the End-User Customer has "no right to sublease, lease, sell or otherwise dispose of the dispensers without the express prior written consent" of Georgia-Pacific. Each Customer Agreement also expressly prohibits the use of Consumables other than those of Georgia-Pacific, and grants other specific rights to Georgia-Pacific, including the right to enter the premises of an End-User Customer in order to remove a Leased/Proprietary Dispenser that is being used in a manner that violates Georgia-Pacific's contractual, property, and intellectual property rights.

29.    The Dispenser Lease Agreements and Customer Agreements expressly provide that only the high-quality products manufactured, marketed, distributed or sold by Georgia-Pacific shall be used in Leased/Proprietary Dispensers. The Dispenser Lease Agreements and Customer Agreements impose other conditions intended to ensure the proper functioning of the Leased/Proprietary Dispensers and the quality of the Consumables dispensed by them.

30.    In addition, the inside of each Leased/Proprietary Dispenser contains a use notice that expressly states that the Leased/Proprietary Dispensers are owned by Georgia-Pacific

and designed for use exclusively with Georgia-Pacific Consumables ("the Notice"). Such notice of ownership also is contained in paperwork accompanying the Proprietary Dispensers.

31.    The Notice states:

This dispenser is subject to restrictions on sale, modification, filling and use, and may be used only to dispense the trademark-bearing products identified on its exterior. Georgia-Pacific Corporation strictly prohibits unauthorized sale, modification, filing, or use of this dispenser and will enforce its rights under United States or foreign laws.

. . . .

This dispenser is the property of Georgia-Pacific Corporation, Atlanta, Georgia.

32.    Through the Notice and the Dispenser Lease Agreements and Customer Agreements, industry Distributors, operators of restroom facilities, and other manufacturers of dispensers and paper products are aware that Georgia-Pacific maintains title to, and ownership of, its Leased/Proprietary Dispensers, and that only Georgia-Pacific's high-quality Consumables may be used in the dispensers.

33.    The standard industry practice of Distributors, operators of restroom facilities, and manufacturers is to respect the contractual, ownership, and intellectual property rights described herein and similar arrangements used by other industry participants concerning the use of Proprietary Dispensers.

34.    Because Leased/Proprietary Dispensers are designed for use with Consumables from a specific source, use of alternate products can cause dispenser malfunction.

## IV.    Georgia-Pacific's EnMotion® Dispenser

35.    In October 2002, Georgia-Pacific introduced a new and innovative Proprietary "touchless" towel Dispensing System under the EnMotion® brand name.

36.     Georgia-Pacific obtained the following registrations related to the

EnMotion® Dispenser and paper towel system:

| Mark | United States Reg. No. | Products Included in Goods Description |
|------|------------------------|----------------------------------------|
| EnMotion | 2664519 | Paper towel dispenser |
| EnMotion | 2743984 | Paper towel dispenser, non-metal |
| EnMotion | 2834670 | Paper towels |
| EnMotion Logo | 2738343 | Paper towel dispenser |
| Touchless Design Logo | 2767918 | Paper towel dispenser |

37.     The distinctive "EnMotion® Logo" is reproduced below:



38.     The distinctive "Touchless Design Logo Mark" is reproduced below:



39.     A reproduction of a photograph of a "touchless" EnMotion® Dispenser

bearing the EnMotion®, Georgia-Pacific®, Touchless Design Logo and GP Logo marks

(collectively, the "Georgia-Pacific Trademarks") is attached hereto as Exhibit C.

40. Georgia-Pacific also has a pending application (Serial No. 78/512,914) for the following logo as well:



41. Georgia-Pacific spent millions of dollars to develop its EnMotion® touchless technology. To use the EnMotion® Dispenser, a user simply moves his or her hand within the sensor range of the dispenser. This action causes the EnMotion® Dispenser to dispense a ten-inch wide towel.

42. Georgia-Pacific's EnMotion® Dispenser is hygienically superior to other dispensers because the user never makes physical contact with the dispenser, and does not have to use a handle or lever to dispense a towel. Many commercial facilities lease EnMotion® Dispensers as a means of enhancing customer satisfaction and goodwill.

43. Georgia-Pacific's EnMotion® Dispenser also eliminates waste and results in significant cost savings to the End-User Customers. The EnMotion® Dispenser has both a control mechanism and a time delay setting to regulate the amount of paper dispensed with each use.

44. The EnMotion® Dispenser further reduces waste and results in significant cost savings by allowing every roll of paper towel to be used completely. Building maintenance personnel replace paper towel rolls at regular intervals. To prevent the possibility that restroom patrons will encounter an un-stocked dispenser between maintenance calls, building maintenance personnel often preemptively replace partially used rolls before such rolls have been completely used, a practice that results in wasted product. The EnMotion® Dispenser prevents this practice (and waste) through a dual-roll transfer system. When the first paper

towel roll is completely depleted, a back-up roll rotates, via a carousel, to the lower portion of the dispenser. In addition, this mechanism allows 100% towel utilization without any risk that a restroom patrol will encounter an empty dispenser.

      45.    EnMotion® paper, like the EnMotion® Dispenser, is of superior quality. End-User Customers and the restroom patrons can distinguish EnMotion® paper from other, different quality brands.

      46.    Georgia-Pacific's EnMotion® Dispensers are intended to dispense only Georgia-Pacific's high quality, high performing EnMotion® ten-inch size paper, a size that is not standard in the industry.

      47.    The EnMotion® Dispensers, like Georgia-Pacific's other Leased/Proprietary Dispensers, are owned by Georgia-Pacific and leased to Distributors and End-User Customers through Dispenser Agreements and Customer Agreements, respectively. These agreements expressly provide that only high quality EnMotion® paper may be used in the EnMotion® Dispensers.

      48.    In addition, each EnMotion® Dispenser contains the Notice.

      49.    A copy of the Notice as it appears in the EnMotion® Dispenser is below:



50.    Because of their unique features, including superior hygienics, waste minimization and resulting cost savings, high quality, and reliability, the EnMotion® Dispenser and EnMotion® paper have become immensely popular in the market and the Touchless Design Logo and EnMotion® Logo marks have gained significant recognition in the industry, resulting in strong market demand for the dispenser. Georgia-Pacific already has leased or received orders for more than 1,000,000 EnMotion® Dispensers.

## V.    Particular EnMotion® Distributors and End-User Customers

51.    Welsh Paper Company ("Welsh") is a Distributor located in Youngsville, North Carolina. Welsh is an authorized EnMotion® Distributor that markets and distributes EnMotion® Dispensers and EnMotion® paper towel rolls according to the terms and conditions of a Dispenser Lease Agreement. A copy of this agreement is attached hereto as Exhibit A.

52.    End-User MudCats is a minor league baseball organization located in Zebulon, North Carolina. MudCats has entered into a Customer Agreement with Georgia-Pacific and Welsh to sublease EnMotion® Dispensers. A copy of this agreement is attached hereto as Exhibit B.

53.    End-User Mudcats entered into this Customer Agreement on May 5, 2003. Pursuant to this Customer Agreement, Welsh Paper delivered 29 EnMotion® Dispenses to End-User Mudcats.

## VI.    Von Drehle's Wrongful Acts

54.    Von Drehle manufacturers and distributes towel and tissue products for the away-from-home market, including but not limited to industrial and commercial locations, medical and government complexes, and airports and hotels.

55.     Georgia-Pacific and Von Drehle are competitors that market in the same trade channels to Distributors and End-User Customers.

56.     Through common industry practices, such as the Notice and the Dispenser Lease Agreements and Customer Agreements, Von Drehle undoubtedly has been aware that Distributors and End-User Customers, including End-User MudCats, are bound by the contractual restrictions on the use of Georgia-Pacific's EnMotion® Dispensers described herein, and by Georgia-Pacific's property and intellectual property rights related to the EnMotion® Dispensers.

57.     Moreover, on January 7, 2005, counsel for Georgia-Pacific sent a demand letter to Von Drehle specifically advising Von Drehle that Georgia-Pacific maintains ownership of its EnMotion® Dispensers. A copy of this demand letter is attached as <u>Exhibit D</u>.

58.     Shortly thereafter, in an article appearing in the March/April 2005 *Maintenance Sales News*, Von Drehle's Chairman, Raymond von Drehle, admitted as such, stating "we've taken a different approach. Our distributors are not required to maintain time-consuming lease programs with their customers."

59.     Despite this knowledge, Von Drehle has knowingly and intentionally manufactured — or directed the manufacture — and sold — or directed the sale of — finished paper towel rolls designed specifically and solely for use in EnMotion® Dispensers. Von Drehle markets these finished paper towel rolls as its product number 810-B ("810-B Towel"). The 810-B Towel is a ten-inch towel specifically designed to fit Georgia-Pacific's unique and proprietary EnMotion® Dispenser.

60.     Von Drehle's sale and marketing of ten-inch size towel is no accident. In the January 7, 2005 letter, counsel for Georgia-Pacific advised Von Drehle that its proprietary

EnMotion® Dispenser are the only dispensers on the market that hold a ten-inch size paper towel roll.

61.    Though Von Drehle responded to this letter on January 12, January 25, and January 27, (copies of these letters are attached as <u>Exhibits E, F, and G</u>), it was not until March 7, 2005 that Von Drehle advised it was "now offer[ing] a 10-inch hard wound roll towel dispenser which is to be used with Von Drehle's Number 810B towel. This dispenser will be sold as Von Drehle's Item Number 28810." A copy of this letter is attached as <u>Exhibit H</u>.

62.    Despite the assertion in its March 7, 2005 letter, and approximately four months later, no such dispenser is currently offered for sale on Von Drehle's web site. A composite exhibit of the "Dispenser Products" offered on Von Drehle's website is attached as <u>Exhibit I</u>. A review of these documents reveals no dispenser with the Item Number 28810.

63.    Moreover, no such dispenser has been located by Georgia-Pacific in the marketplace to date.

64.    Von Drehle has induced and solicited Distributors to market its 810-B Towel for use in EnMotion® Dispensers. Von Drehle has induced and solicited both authorized Georgia-Pacific/EnMotion® Distributors, and Distributors who are not authorized to market EnMotion® Dispensers or towels (including, without limitation, CJMS), to market the 810-B Towel for use in EnMotion® Dispensers.

65.    The 810-B Towel does not meet the same specifications as Georgia-Pacific's EnMotion® paper towels.

66.    Upon information and belief, Von Drehle has marketed its 810-B Towel as fitting the EnMotion® Dispenser, thereby causing distributors, such as CJMS, to refer to the

810-B Towel in conjunction with the EnMotion® brand on quotes or in the marketing materials submitted to End-User Customers, including End-User MudCats.

67.    As a result of Von Drehle's marketing efforts, the 810-B Towel recently began appearing in EnMotion® Dispensers in North Carolina, including those of End-User MudCats.

68.    Von Drehle (a) is acting with intentional disregard for Georgia-Pacific's intellectual property, contract, and property rights by intentionally targeting Distributors and End-User Customers of the EnMotion® Dispensers and encouraging them to breach the Dispenser Lease Agreements and the Customer Agreements, and to violate Georgia-Pacific's intellectual property, contract, and property rights; or (b) at minimum, is continuing to supply the 810-B Towel with the knowledge that the 810-B Towel is likely being placed in, and dispensed by, EnMotion® Dispensers in a wrongful and infringing manner.

69.    Von Drehle is soliciting and encouraging Distributors, including, without limitation, CJMS, to place the 810-B Towel in EnMotion® Dispensers, and is causing End-User Customers to dispense the 810-B Towel from dispensers displaying the Georgia-Pacific Trademarks, thereby misrepresenting the origin, nature, quality and characteristics of Georgia-Pacific's EnMotion® Dispensers and EnMotion® paper towels, and otherwise impairing the Georgia-Pacific Trademarks.

70.    Von Drehle's actions are depriving Georgia-Pacific of its right to control the quality of the paper dispensed by the EnMotion® Dispenser and, thus, are causing the misrepresentation of the nature, quality, and characteristics of Georgia-Pacific's EnMotion® Dispensers and EnMotion® paper.

71.     Von Drehle's actions in North Carolina are part of a company-wide sales and distribution strategy.

72.     For example, the 810-B Towel has been found "stuffed" into Georgia-Pacific's EnMotion® Dispensers at Robert Morris University ("RMU") at Moon Township, Pennsylvania.

73.     Upon information and belief, the 810-B Towel was sold to RMU from a distributor in Monroeville, Pennsylvania called Erzen Associates, Inc.

74.     A reproduction of a photograph of the 810-B Towel "stuffed" into a Georgia-Pacific EnMotion® Dispenser at this facility is attached hereto as Exhibit J.

75.     The 810-B Towel also been found "stuffed" into Georgia-Pacific's EnMotion® Dispenser at a Petro Truck Stop in Claysville, Pennsylvania.

76.     Upon information and belief, the 810-B Towel was sold to the Petro Truck Stop from a distributor in Washington, Pennsylvania called Steratore Sanitary Supply.

77.     A reproduction of a photograph of the 810-B Towel "stuffed" into a Georgia-Pacific EnMotion® Dispenser at this facility is attached hereto as Exhibit K.

78.     Upon information and belief, another example of Von Drehle's company-wide malfeasance occurred in Searcy, Arkansas, where Martin Industrial Supply, a Von Drehle distributor, is specifically marketing the 810-B Towel for use in EnMotion® Dispensers. These activities have caused a Georgia-Pacific distributor to lose at least one account in the area.

79.     Finally, upon information and belief, a company called Callico Distribution in Trenton, Massachusetts is also marketing the 810-B Towel for use in EnMotion® Dispensers.

## VII. CJMS's Wrongful Acts

80. CJMS is a Distributor of paper towels and other finished paper products in Raleigh, North Carolina and the surrounding area.

81. CJMS markets in the same channels as Georgia-Pacific's authorized EnMotion® Distributors, such as Welsh, and targets similar End-User Customers.

82. Through common industry practices, such as the Notice and the Dispenser Lease Agreements and Customer Agreements, CJMS is aware that Distributors and End-User Customers are bound by contractual restrictions on the use of Georgia-Pacific's EnMotion® Dispensers, and by Georgia-Pacific's property and intellectual property rights related to the EnMotion® Dispensers.

83. Despite this knowledge, CJMS has openly marketed and sold the 810-B Towel specifically for use in EnMotion® Dispensers to End-User Customers, including, without limitation, End-User MudCats.

84. On its web site, CJMS specifically states that the 810-B Towel is "Guaranteed to fit" Georgia-Pacific's EnMotion® Dispensers. The CJMS web page advertising the 810-B Towel is depicted on the following page. On information and belief, the Preserve® mark referred to on the web page is owned and used by Von Drehle, and, in fact, the product advertised is the 810-B Towel.



85.     As a result of CJMS's actions, Von Drehle's 810-B Towel product began

appearing in EnMotion® Dispensers in North Carolina, including, without limitation,

EnMotion® Dispensers subleased by End-User MudCats.

86.     At End-User MudCats' stadium, Von Drehle's 810-B Towel recently has

been observed "stuffed" in Georgia-Pacific's EnMotion® Dispensers, in violation of the

Dispenser Lease Agreements and Customer Agreements.  A picture of the front of one of the

EnMotion® Dispensers that has been "stuffed" with Von Drehle's 810-B Towel at End-User

MudCats' facility is attached as Exhibit L. Another picture showing the same EnMotion® Dispenser in an opened position with the "stuffed" Von Drehle 810-B Towel exposed is attached as Exhibit M.

87.    The EnMotion® Dispensers bearing Von Drehle's 810-B Towel at the MudCats stadium are and have been affixed with the Notice.

88.    Von Drehle's and CJMS's actions are depriving Georgia-Pacific of the revenues to which it is entitled under the Dispenser Lease Agreements and Customer Agreements. Specifically, the Dispenser Lease Agreement provides that "Distributor agrees and acknowledges that only G-P branded towels, tissue, soap, air freshener and/or other sanitary washroom dispensed products (Products) shall be used in the Dispensers. Use of other unauthorized product(s) is strictly prohibited." *See* Exhibit A ¶ 4.1.

89.    A sublessee is subject to the same requirement: "All subleases of Dispensers to Customers shall be solely upon the terms and conditions of this Agreement and of the Sublease Registration Form. . . ." *Id.* ¶ 2.1.

90.    The Sublease Registration Form in turn requires that the customer "use the dispensers for the sole purpose of dispensing, under G-P trademarks, only G-P's branded towel, tissue, soap, air freshener and/or other sanitary dispensed products . . . authorized for use in the dispensers and purchased from the Distributor." *See* Exhibit B.

91.    CJMS (a) is acting with intentional disregard for Georgia-Pacific's intellectual property, contract, and property rights by intentionally targeting End-User Customers, such as End-User MudCats, of EnMotion® Dispensers and encouraging them to breach the Dispenser Lease Agreements and the Customer Agreements, and to violate Georgia-Pacific's intellectual property, contract, and property rights; or (b) at minimum, is continuing to

Case 5:05-cv-00478-BO   Document 1   Filed 07/08/05   Page 20 of 62

supply the 810-B Towel with the knowledge that these products are likely being placed in, and dispensed by, EnMotion® Dispensers in a wrongful and infringing manner.

92.     CJMS is causing End-User Customers to dispense the 810-B Towel from dispensers displaying the Georgia-Pacific Trademarks, thereby misrepresenting the origin, nature, quality, and characteristics of the EnMotion® Dispensers and EnMotion® paper towels, and otherwise impairing Georgia-Pacific's Trademarks.

93.     CJMS's actions also are depriving Georgia-Pacific of its right to control the quality of the paper dispensed by its branded dispenser and, thus, are causing the misrepresentation of the nature, quality, and characteristics of Georgia-Pacific's EnMotion® Dispensers and EnMotion® paper.

## VIII.  Resulting Harm

94.     These acts harm Georgia-Pacific and defraud the public in several interrelated ways. Among other things, these acts:

a.     allow End-User Customers to benefit from the prestige of the EnMotion® towel Dispensing Systems and the Georgia-Pacific Trademarks by falsely passing off Von Drehle towels as EnMotion®, Georgia-Pacific®, and/or GP towels, thereby diverting sales from Georgia-Pacific and diminishing Georgia-Pacific's reputation, goodwill, revenue, and profits;

b.     deprive Georgia-Pacific of its right to control the nature and quality of the towels associated with the EnMotion® Dispensers and the Georgia-Pacific Trademarks, thereby diminishing Georgia-Pacific's reputation, goodwill, revenue, and profits;

c.     cause confusion (including, without limitation, post-sale confusion and confusion as to connection, affiliation, and sponsorship) among: (i) consumers of towels dispensed from Georgia-Pacific's EnMotion® Dispensers; (ii) present and prospective End-User Customers of the EnMotion® Dispenser; and (iii) present and prospective End-User Customers

of EnMotion®, Georgia-Pacific® and GP brand towels and other Consumables, thereby

diminishing Georgia-Pacific's reputation, goodwill, revenue, and profits; and

        d.     interfere with Georgia-Pacific's relationships with its Distributors and

End-User Customers and disrupt Georgia-Pacific's marketing programs.

### Count I. False Representations and False Designation of Origin (Lanham Act, 15 U.S.C. § 1125 (a)(1)(A)) (All Defendants)

        95.     Georgia-Pacific realleges and incorporates herein by reference the

allegations of paragraphs 1 through 94 above.

        96.     Georgia-Pacific's longstanding use and substantial promotion of the

Georgia-Pacific® and GP Logo marks has caused Commercial End-Users and the public to

identify Georgia-Pacific as the source and origin of the high-quality, reliable products offered in

connection with the Georgia-Pacific® and GP Logo marks. Further, because of the substantial

commercial success of the EnMotion® Dispensers and EnMotion® paper towels, and because

the EnMotion® and Touchless Design Logo marks are used in conjunction with the well-known

Georgia-Pacific® and GP Logo marks, operators of commercial facilities identify Georgia-

Pacific as the source of the EnMotion® Dispensing System, including the EnMotion®

Dispenser and the EnMotion® paper towels distributed by them.

        97.     Von Drehle has infringed on, and contributed to the infringement of, the

Georgia-Pacific Trademarks (a) by encouraging Distributors to sell, and End-User Customers to

dispense, the 810-B Towel from EnMotion® Dispensers displaying the Georgia-Pacific

Trademarks; and/or (b) by continuing to market, sell, and supply the 810-B Towel with the

knowledge that this product is likely being placed in, and dispensed by, EnMotion® Dispensers.

        98.     CJMS has infringed on, and contributed to the infringement of, the

Georgia-Pacific Trademarks (a) by encouraging and enabling End-User Customers to dispense

the 810-B Towel from EnMotion® Dispensers displaying the Georgia-Pacific Trademarks; and/or (b) by continuing to market, sell, and supply the 810-B Towel with the knowledge that this product is likely being placed in, and dispensed by, EnMotion® Dispensers.

99.     The placement of the 810-B Towel in the EnMotion® Dispensers causes the misrepresentation of the nature, characteristics, and qualities of the EnMotion® Dispensing System (including the EnMotion® Dispenser and EnMotion® towels) by causing the Georgia-Pacific Trademarks to be associated or affiliated with non-EnMotion®, non-Georgia-Pacific paper towels, and with paper towels of different quality.

100.     The placement of the 810-B Towel in the EnMotion® Dispensers also deprives Georgia-Pacific of control over the quality of the Consumables associated with the EnMotion® Dispensers and the Georgia-Pacific Trademarks.

101.     The foregoing acts, practices and conduct of the Defendants constitute unfair competition, false designation, description or representation, false advertising, or unfair or deceptive trade practices that are likely to cause confusion or mistake by the public, in violation of 15 U.S.C. § 1125(a).

102.     As a direct and proximate result of the foregoing acts, practices and conduct, Georgia-Pacific has been, or is likely to be, substantially injured in its business, including lost revenues and profits, and injury to its reputation and business identity, resulting in diminished revenues, profits, and goodwill.

103.     Georgia-Pacific has no adequate remedy at law because the EnMotion® products and the Georgia-Pacific Trademarks are unique and represent to the public the identity, reputation, and goodwill of Georgia-Pacific's products. Certain damages caused by Defendants' acts may not be susceptible to any ready or precise calculation because such damages involve

lost profits, lost business opportunities, loss of goodwill, and the impairment of the integrity of Georgia-Pacific's proprietary products and Georgia-Pacific Trademarks. Thus, monetary damages alone cannot fully compensate Georgia-Pacific for Defendants' misconduct.

104.    Unless enjoined by the Court, Defendants will continue to make false descriptions or representations and to cause the 810-B Towel to be passed off as being manufactured by, sponsored by, or associated with Georgia-Pacific, all to Georgia-Pacific's irreparable injury. Unless enjoined, the Defendants also will continue to make false representations regarding EnMotion® Dispensers and EnMotion® paper towels. This threat of future injury to Georgia-Pacific's business identity, goodwill and reputation makes injunctive relief necessary to prevent the Defendants' continued false descriptions or representations and passing off.

105.    Defendants' conduct is causing financial injury to Georgia-Pacific in the form of lost business, is unjustly enriching Defendants, and is causing Georgia-Pacific irreparable harm by damaging its reputation and goodwill, entitling Georgia-Pacific to compensatory damages, an accounting, and injunctive relief.

## Count II. Trademark Infringement Under the Lanham Act (15 U.S.C. § 1114); Contributory Infringement (All Defendants)

106.    Georgia-Pacific realleges and incorporates herein by reference the allegations or paragraphs 1 through 94 above.

107.    Without Georgia-Pacific's consent, Defendants have used in commerce, and contributed to the use in commerce, a reproduction, counterfeit, copy or colorable imitation of the Georgia-Pacific Trademarks in connection with the sale, offering for sale, distribution, and advertising of products and services.

108.    Such use is likely to cause confusion and mistake or to deceive End-User Customers and potential End-User Customers in violation of 15 U.S.C. § 1114(1).

109.    As a direct and proximate result of the foregoing acts, practices and conduct, Georgia-Pacific has been, or is likely to be, substantially injured in its business, including its reputation and business identity, resulting in lost revenues and profits, and diminished goodwill and reputation.

110.    Georgia-Pacific lacks an adequate remedy at law because its proprietary products and the Georgia-Pacific Trademarks are unique and represent to the public the source, reputation, and goodwill of Georgia-Pacific's products.  Certain damages caused by Defendants' acts may not be susceptible to any ready or precise calculation because such damages involve lost business opportunities, loss of goodwill, and the impairment of the integrity of Georgia-Pacific's distribution and marketing systems.  Accordingly, monetary damages alone cannot fully compensate Georgia-Pacific for Defendants' misconduct.

111.    Unless enjoined by the Court, Defendants will continue to use, infringe, and contribute to the infringement of the Georgia-Pacific Trademarks, thereby irreparably injuring Georgia-Pacific.  This threat of future injury to Georgia-Pacific's business identity, goodwill and reputation requires injunctive relief to prevent Defendants' continued infringement, contributory infringement, and trademark misuse, and to mitigate Georgia-Pacific's damages.  Georgia-Pacific also is entitled to damages and an accounting for the Defendants' profits.

**Count III.  Counterfeiting (15 U.S.C. §§ 1114(a), 1117(b)) (All Defendants)**

112.    Georgia-Pacific realleges and incorporates by reference the allegations of paragraphs 1 through 94 above.

113.    By causing the 810-B Towel to be placed in EnMotion® Dispensers, Defendants have used a counterfeit mark in commerce in connection with the sale, offering for sale, or distribution of goods and services.

114.    The Defendants intentionally exploited the counterfeit mark in the connection with the sale, offering for sale, or distribution of goods and services.

115.    As a result, Georgia-Pacific is entitled to treble damages and attorney fees pursuant to 15 U.S.C. § 1117(b) or, at Georgia-Pacific's election at any time prior to final judgment, statutory damages pursuant to 15 U.S.C. § 1117(c).

**Count IV.  Common Law Unfair Competition (All Defendants)**

116.    Georgia-Pacific realleges and incorporates herein by reference the allegations of paragraphs 1 through 94 above.

117.    The Defendants have infringed (or contributed to the infringement of), and are infringing upon (or are contributing to the infringement of), Georgia-Pacific Trademarks. Defendants are offering to sell, and have sold, the 810-B Towel and are promoting that product in a manner that is likely to create confusion or misunderstanding as to source, sponsorship, or approval of the parties' goods.  The Defendants' acts also are likely improperly to suggest that the 810-B Towel has the sponsorship or approval of Georgia-Pacific, or that the 810-B Towel is of the high standard or quality associated with Georgia-Pacific, or otherwise create a likelihood of confusion or misunderstanding.

118.    Defendants' acts constitute unfair competition, entitling Georgia-Pacific to injunctive relief and damages in an amount to be proven at trial.

**Count V. Tortious Interference with Georgia-Pacific's Contractual Relationships (All Defendants)**

119.    Georgia-Pacific realleges and incorporates herein by reference the allegations of paragraphs 1 through 94 above.

120.    Georgia-Pacific is a party to valid contracts under which Distributors are (a) required to distribute Georgia-Pacific's high quality products for use in EnMotion® Dispensers, and (b) required to ensure that End-User Customers use only Georgia-Pacific's high quality paper in EnMotion® Dispensers.

121.    Georgia-Pacific is a party to valid contracts under which End-User Customers are required to use only Georgia-Pacific products in EnMotion® Dispensers. Georgia-Pacific also is an express and intended third-party creditor beneficiary to valid contracts under which End-User Customers are required to use only Georgia-Pacific products in EnMotion® Dispensers.

122.    None of the Defendants is a party to, or third party beneficiary of, those contracts; rather they are unrelated third parties.

123.    The Defendants are aware of Georgia-Pacific's contracts with its Distributors and End-User Customers.

124.    Despite this knowledge, and without justification, Von Drehle has encouraged Georgia-Pacific's Distributors to purchase the 810-B Towel from Von Drehle for use with the EnMotion® Dispenser.

125.    Despite this knowledge, and without justification, Von Drehle has encouraged and caused other, non-authorized Distributors (including, without limitation, CJMS) to purchase the 810-B Towel for use with the EnMotion® Dispenser.

126.    Despite this knowledge, and without justification, the Defendants encouraged and caused Georgia-Pacific's End-User Customers (including, without limitation, End-User MudCats) to purchase the 810-B Towel for use with the EnMotion® Dispenser.

127.    The Defendants each acted intentionally or with substantial certainty that their conduct would cause Distributors and End-User Customers to purchase the 810-B Towel for sale and use with the EnMotion® Dispenser, in violation of Georgia-Pacific's contractual rights.

128.    The Defendants have used improper means to achieve interference with Georgia-Pacific's contracts, including: violations of the Lanham Act; common law unfair competition; interference with Georgia-Pacific's property rights (including, without limitation, the commission of torts such as trespass to chattels and conversion); misrepresentation to Distributors, End-User Customers, and restroom users; and violations of established industry practice, ethics, and norms.

129.    Von Drehle's conduct – including soliciting Distributors to purchase or suggesting that they may purchase Von Drehle's 810-B Towel product for use in the EnMotion® Dispensers – disrupts, harms, and interferes with Georgia-Pacific's contracts with its Distributors

130.    The Defendants' conduct – including selling and encouraging the sale of Von Drehle's 810-B Towel product to End-User Customers for use in EnMotion® Dispensers – disrupts, harms, and interferes with Georgia-Pacific's contracts with its Distributors and End-User Customers.

131.    The Defendants' interference with Georgia-Pacific's contracts has caused, and will continue to cause, financial damage to Georgia-Pacific, including, without limitation,

lost profits from the loss of sales of Georgia-Pacific paper towels, and damage to the Georgia-Pacific Trademarks. Defendants' interference also will irreparably harm Georgia-Pacific's relationships with its Distributors and End-User Customers.

132. As a result of this conduct, Georgia-Pacific is entitled to injunctive relief and damages, in an amount to be proven at trial.

**Count VI. Tortious Interference with Georgia-Pacific's Current and Prospective Business Relationships (All Defendants)**

133. Georgia-Pacific realleges and incorporates herein by reference the allegations of paragraphs 1 through 94 above.

134. Georgia-Pacific possesses a valid business expectancy (confirmed by contract, industry custom and Georgia Pacific's property and intellectual property rights) that (a) Georgia-Pacific's authorized EnMotion® Distributors will purchase and distribute only Georgia-Pacific products for use with the EnMotion® Dispensers; (b) only authorized EnMotion® Distributors will supply high quality, EnMotion® paper for the EnMotion® Dispensers; and (c) End-User Customers (including, without limitation, End-User MudCats) will purchase and use only Georgia-Pacific products in EnMotion® Dispensers.

135. None of the Defendants is a party to, or third party beneficiary of, those business relations; rather they are unrelated third parties.

136. The Defendants are aware of Georgia-Pacific's business relationships with its Distributors and End-User Customers and its business expectancies related thereto.

137. Despite this knowledge, and without justification, Von Drehle has encouraged Georgia-Pacific's distributors to purchase the 810-B Towel for use in EnMotion® Dispensers.

138. Despite this knowledge, and without justification, Von Drehle has encouraged and caused other, non-authorized Distributors (including, without limitation, CJMS) to purchase the 810-B Towel for use in EnMotion® Dispensers.

139. Despite this knowledge, and without justification, the Defendants have encouraged and caused Georgia-Pacific's End-User Customers (including, without limitation, End-User MudCats) to purchase the 810-B Towel for use in EnMotion® Dispensers.

140. The Defendants acted intentionally or with substantial certainty that their conduct would cause Distributors to purchase and market for use with EnMotion® Dispensers, and would cause End-User Customers to purchase the 810-B Towel for use in EnMotion® Dispensers.

141. But for Defendants' interference, Georgia-Pacific would have entered into contracts for the sale of towels to be used in its EnMotion® Dispensers.

142. The Defendants have used improper means to achieve interference with Georgia-Pacific's current and prospective business relationships, including: violations of the Lanham Act; common law unfair competition; interference with Georgia-Pacific's property rights, misrepresentation to Distributors, End-User Customers, and restroom users; and violations of established industry practice, ethics, and norms.

143. Von Drehle's conduct — including soliciting Distributors to purchase, or suggesting that they may purchase, Von Drehle products for use in EnMotion® Dispensers — disrupts, harms, and interferes with Georgia-Pacific's current and prospective relationships with Distributors.

144.  Von Drehle's 810-B Towel product to End-User Customers for use in EnMotion® Dispensers — disrupts, harms, and interferes with Georgia-Pacific's business relationships with its End-User Customers.

145.  The Defendants' interference with Georgia-Pacific's business expectancies has caused, and will continue to cause, financial damage to Georgia-Pacific.  Such damages include, without limitation, lost profits from the loss of sales of Georgia-Pacific paper towels, and the impairment of the Georgia-Pacific Trademarks.  The Defendants' interference, if not enjoined, will also irreparably harm Georgia-Pacific's relationships with its Distributors and End-User Customers.

146.  As a result of this conduct, Georgia-Pacific is entitled to injunctive relief and damages in an amount to be proven at trial.

## Count VII. Unfair and Deceptive Trade Practices (All Defendants)

147.  Georgia-Pacific realleges and incorporates herein by reference the allegations of paragraphs 1 through 146 above.

148.  Von Drehle has infringed on, and contributed to the infringement of, the Georgia-Pacific Trademarks (a) by encouraging Distributors to sell, and End-User Customers to dispense, the 810-B Towel from EnMotion® Dispensers displaying the Georgia-Pacific Trademarks; and/or (b) by continuing to market, sell, and supply the 810-B Towel with the knowledge that this product is likely being placed in, and dispensed by, EnMotion® Dispensers.

149.  CJMS has infringed on, and contributed to the infringement of, the Georgia-Pacific Trademarks (a) by encouraging and enabling End-User Customers to dispense the 810-B Towel from EnMotion® Dispensers displaying the Georgia-Pacific Trademarks;

and/or (b) by continuing to market, sell, and supply the 810-B Towel with the knowledge that this product is likely being placed in, and dispensed by, EnMotion® Dispensers.

150.    The placement of the 810-B Towel in the EnMotion® Dispensers causes the misrepresentation of the nature, characteristics, and qualities of the EnMotion® Dispensing System (including the EnMotion® Dispenser and EnMotion® towels) by causing the Georgia-Pacific Trademarks to be associated or affiliated with non-EnMotion®, non-Georgia-Pacific paper towels, and with paper towels of different quality.

151.    The placement of the 810-B Towel in the EnMotion® Dispensers also deprives Georgia-Pacific of control over the quality of the Consumables associated with the EnMotion® Dispensers and the Georgia-Pacific Trademarks.

152.    Defendants' actions constitute unfair or deceptive acts that affect commerce here in North Carolina and elsewhere in the United States and have proximately injured Georgia-Pacific in violation of North Carolina General Statute § 75-1.1, *et seq.*

153.    Defendants' conduct is causing financial injury to Georgia-Pacific in the form of lost business, is unjustly enriching Defendants, and is causing Georgia-Pacific irreparable harm by damaging its reputation and goodwill, entitling Georgia-Pacific to damages, an accounting, treble damages, and attorney's fees pursuant to North Carolina General Statute §§ 75-16 and 75-16.1.

**Count VIII. Trespass on Chattels; Conversion (All Defendants)**

154.    Georgia-Pacific realleges and incorporates herein by reference the allegations of paragraphs 1 through 94 above.

155.    Georgia-Pacific owns the EnMotion® Dispensers that Defendants are causing to be used in violation of Georgia-Pacific's property rights.

156. The Notices affixed to the EnMotion® Dispensers confirm Georgia Pacific's ownership of those dispensers, and expressly prohibit unauthorized use, including the dispensing of products that do not bear the EnMotion® or Georgia-Pacific Trademarks, thereby providing Georgia-Pacific with possessory rights in the EnMotion® Dispensers.

157. Georgia-Pacific has the right to exercise dominion and control over the EnMotion® Dispensers by canceling the Dispenser and Customer Agreements, or by immediately assuming possession over the EnMotion® Dispensers upon learning that they are being used improperly.

158. Through their acts, Defendants, without authorization, are disturbing Georgia-Pacific's ownership and assuming and exercising rights over Georgia-Pacific's property.

159. Defendants' acts seriously interfere with Georgia-Pacific's ownership rights.

160. Defendant are thereby liable for trespass to chattels and conversion, entitling Georgia-Pacific to damages in an amount to be proven at trial, including damages for loss of use.

**Count IX. Concerted Action (All Defendants)**

161. Georgia-Pacific realleges and incorporates herein by reference the allegations of paragraphs 1 through 94 above.

162. The Defendants acted pursuant to a common scheme designed to place the 810-B Towel in EnMotion® Dispensers.

163.   The Defendants agreed to commit an unlawful act by agreeing to tortiously interfere with Georgia-Pacific's contracts and by infringing Georgia-Pacific's intellectual property rights.

164.   By selling its 810-B Towel to CJMS, Von Drehle agreed, understood, and intended that CJMS would sell its 810-B Towel product for use in Georgia-Pacific's EnMotion® Dispensers.

165.   Through the overt acts of selling its 810-B Towel to CJMS, and otherwise manufacturing, marketing and encouraging the use of its 810-B Towel in EnMotion® Dispensers, Von Drehle furthered the common scheme.

166.   By purchasing the 810-B Towel from Von Drehle and re-selling it to End-User Customers for use in EnMotion® Dispensers, CJMS agreed, understood, and intended that Von Drehle paper would be used in EnMotion® Dispensers in contravention of Georgia-Pacific's rights.

167.   Through the overt acts of purchasing the 810-B Towel from Von Drehle, marketing the 810-B Towel for use in EnMotion® Dispensers, and selling the 810-B Towel to End-User Customers for use in the EnMotion® Dispenser, CJMS furthered the common scheme.

168.   The Defendants are jointly liable for the tortious conduct alleged in paragraphs 1 through 94 above.

## PRAYER FOR RELIEF

WHEREFORE, Georgia-Pacific prays for judgment as follows:

1.   That the Defendants, their officers, agents, co-conspirators, servants, affiliates, employees, parent and subsidiary corporations, attorneys and representatives, and all

those in privity or acting in concert or participation with the Defendants, be preliminarily and permanently enjoined and restrained from directly or indirectly:

a.      Manufacturing, converting, marketing, selling or distributing any Consumables for use in Georgia-Pacific's Leased and Proprietary Dispensers. Such prohibition should include, but not be limited to, paper towels manufactured and/or distributed by Von Drehle for use in Georgia-Pacific's EnMotion® Dispensers;

b.      Performing any actions or using any trademarks, or other words, names, styles, titles, designs or marks that are likely to cause confusion, to cause mistake, or to deceive; or to otherwise mislead the trade or public into believing that Von Drehle's products are Georgia-Pacific's products or in some way connected with Georgia-Pacific's products; or that Georgia-Pacific is a sponsor of Von Drehle or that Von Drehle is in some manner affiliated or associated with or under the supervision or control of Georgia-Pacific, or are likely in any way to lead the trade or the public to associate Von Drehle's products with Georgia-Pacific;

c.      Using any trademarks or engaging in any other conduct that creates a likelihood of injury to the business reputation of Georgia-Pacific or a likelihood of misappropriation of Georgia-Pacific's distinctive trademarks and the goodwill associated therewith;

d.      Tampering with, or encouraging the modification of, Georgia-Pacific's Proprietary Dispensers to allow Von Drehle's products to be dispensed by them;

e.      Interfering with Georgia-Pacific's valid business expectancies or contractual relations; and

f.　Using any unfair or deceptive trade practices, including those complained of herein, which unfairly compete with or injure Georgia-Pacific, its business or the goodwill appertaining thereto.

2.　That the Defendants be required to deliver to the Court or to destroy all copies of any materials that tend to induce the use of Von Drehle's products in connection with Georgia-Pacific's marks.

3.　That Georgia-Pacific be awarded all damages it has sustained by reason of Defendants' wrongful acts, and that such damages be trebled to the extent allowed by law including, without limitation, trebling pursuant to 15 U.S.C. § 1117(b) and North Carolina General Statute § 75-16.

4.　That an accounting be ordered and Georgia-Pacific be awarded all gains, profits and advantages derived by Defendants from their wrongful acts, and that the amount of any accounting be trebled to the extent allowed by law.

5.　That Defendants be required to pay Georgia-Pacific all its litigation expenses, including reasonable attorney's fees and the costs pursuant to 15 U.S.C. §§ 1117(a) and 1117(b) and North Carolina General Statute § 75-16.1

6.      That the Court grant Georgia-Pacific any such other relief it deems just

and proper.

July 8, 2005                                  Respectfully submitted,


                                             *Robert C. Van Arnam*

                                             Douglas W. Kenyon (Bar No. 13242)
                                             Robert C. Van Arnam (Bar No. 28838)
                                             HUNTON & WILLIAMS LLP
                                             One Hannover Square, Suite 1400
                                             421 Fayetteville Street Mall
                                             Raleigh, NC  27601
                                             919-899-3000

                                             Thomas G. Slater, Jr.
                                             John Gary Maynard, III
                                             Benjamin L. Hatch
                                             HUNTON & WILLIAMS LLP
                                             951 E. Byrd Street
                                             Richmond, VA  23219
                                             804-788-8200

                                             Mary McLemore
                                             Emily Kellum Breslin
                                             Georgia-Pacific Corporation
                                             133 Peachtree Street, NE
                                             Atlanta, GA 30303

                                             Counsel for Plaintiff



**Georgia-Pacific**

**North American Commercial Business**

## ENMOTION BRAND DISPENSING SYSTEM LEASE AGREEMENT

**Dispenser Leasing**

1.1 All Dispensers leased from Georgia-Pacific Corporation, North American Commercial Business (G-P) pursuant to this Agreement remain the property of G-P. Distributor shall pay an initial fee ("Dispenser Lease Charge") to G-P to minimize administrative handling expenses associated with this Agreement. The amount of the fee shall be in accordance with G-P's Dispenser Lease Charge Schedule in effect on the date of G-P's receipt of Distributor's Dispenser order.

1.2 The initial Dispenser lease term shall be five (5) years from the date of delivery of any Dispenser to Distributor, and shall be extended automatically thereafter from year-to-year without further charge unless otherwise terminated by either party in accordance with of this Agreement.

**Use of Dispensers by Others**

2.1 Distributor shall sublease the Dispensers to the end-user customers that shall be approved by G-P and set forth in Exhibit "A" attached hereto ("Customers"). All subleases of Dispensers to Customers shall be solely upon the terms and conditions of this Agreement and of the Sublease Registration Form ("Sub Form") which is attached hereto as Addendum 1.

2.2 The Sub Form must be fully executed by Distributor for each Customer location in which Dispensers are to be installed. Execution of the Sub Form does not transfer ownership of the Dispensers by G-P to Distributor or Customer.

2.3 G-P does not restrict Distributor from subleasing Dispensers to Customers pursuant to a reasonable fee. Notwithstanding any such fee, Distributor acknowledges that use by Customers shall not result in the transfer of ownership of Dispensers from G-P to Distributor or Customers. In the event of any such fee, Distributor shall be responsible for collecting and paying all taxes and other fees associated with such transaction.

2.4 Distributor agrees and acknowledges that it shall not loan, sell, lease or otherwise dispose of the Dispensers except as permitted in this Agreement and Distributor agrees that it will not sublease, sell or otherwise dispose of Dispensers outside the United States.

**Records**

3.1 Distributor shall keep all accurate Dispenser sublease records, approved end-user account forms (Exhibit "A") and all Sub Forms (collectively "Dispenser Documentation"), at its principal place of business with respect to all Customers and shall allow G-P to exercise its right to review, audit and copy all Dispenser Documentation that Distributor has in its possession or control upon reasonable notice.

3.2 Distributor agrees that, at termination or expiration of this Agreement, Distributor shall immediately forward all Dispenser Documentation to G-P.

**Restrictions for Dispensers**

4.1 Distributor agrees and acknowledges that only G-P branded towels, tissue, soap, air freshener and/or other sanitary washroom dispensed products (Products) shall be used in the Dispensers. Use of other unauthorized product(s) is strictly prohibited.

4.2 Distributor shall not loan, sell, lease or otherwise transfer Products to Customers where such Products will be utilized in Dispensers leased by any other G-P distributor (hereinafter any other G-P distributor shall be known as "G-P DISTRIBUTOR"). In the event that Distributor displaces a G-P DISTRIBUTOR with respect to supplying Products for leased Dispensers at any Customers' location, Distributor shall cause Dispensers leased to Distributor to be installed at the respective Customer location and the event shall be treated as a displacement in accordance with Paragraph 4.3.

4.3 Displacement (a) Before Distributor subleases Dispensers to any Customer where such Dispensers will displace Dispensers of a G-P DISTRIBUTOR, Distributor shall give G-P and the G-P DISTRIBUTOR a minimum of thirty- (30) days advance written notice that such displacement will occur. The notice shall identify the number, type and location of Dispensers to be displaced. Unless Distributor and the G-P DISTRIBUTOR otherwise agree, Distributor shall, at its expense at the time Dispensers leased to Distributor are installed, remove and package the G-P DISTRIBUTOR's Dispensers and promptly thereafter deliver them to the principal place of business of the G-P DISTRIBUTOR responsible for the same. Such delivery must be made during normal business hours and the displaced Dispensers must be in the same condition as prior to removal by Distributor.

(b) Should Distributor sublease Dispensers to any Customer which, as a result of such sublease, displaces Dispensers of a G-P DISTRIBUTOR without: (i) obtaining advance written agreement for displacement from the G-P DISTRIBUTOR; or, (ii) obtaining advance written request by the Customer, subject to G-P approval, expressly terminating its relationship for cause with the G-P DISTRIBUTOR and thereby requesting that Distributor replace such G-P DISTRIBUTOR with regard to Dispensers and Products, Distributor shall be liable to the G-P DISTRIBUTOR for the Dispenser Lease Charge paid by the G-P DISTRIBUTOR for displaced Dispensers, plus One Hundred Dollars ($100.00) per Dispenser for the G-P DISTRIBUTOR's selling and installation cost.

(c) The procedures outlined in Paragraphs 4.3(a) and (b) shall not apply to displacements involving (i) tax supported institutions seeking multiple distributor bids, (ii) users that customarily solicit formal bid requests for a specific time period, (iii) national account business, (iv) an end-user complaint of Distributor supply or service issues, or (v) where G-P determines it is appropriate to change distributors.

(d) Distributor agrees and acknowledges that in the event it assumes business as a result of displacement as provided in Paragraph 4.3 (a) or (c), Distributor shall pay a fee to G-P ("Customer Exchange Fee") to be passed through to the G-P DISTRIBUTOR that previously serviced such business as

partial relief to such G-P DISTRIBUTOR for the loss of its original Dispenser investment costs. The amount of the Customer Exchange Fee shall be in accordance with G-P's Customer Exchange Fee Schedule in effect on the date of Distributor's assumption of such business. Exhibit A hereto will be updated to reflect Distributor's assumption of such business at that time.

## G-P's Intellectual Property

5.1 All Intellectual Property Rights including trademarks, trade names, patents, copyrights, registered design rights, know-how and any labels, advertising and promotion created and other literature used in connection with Dispensers are and shall remain the property of G-P.

5.2 Distributor acknowledges and agrees that execution of this Agreement by G-P constitutes the grant of a revocable, non-exclusive, non-transferable, limited license, under all patents which G-P may now own or acquire covering the Dispensers.

5.3 The Distributor shall promptly and fully notify G-P in writing of any actual, threatened or suspected infringement or dilution of, or any action, claims or demands or proceeding in relation to, any of the Intellectual Property. The Distributor shall not (i) cause or, where preventable, permit anything to be done (or, as the case may be, not done) which damages or may damage or endanger the Intellectual Property Rights of G-P; (ii) in any way alter the packaging or labeling of the Dispensers as supplied by G-P; (iii) remove or in any way tamper with G-P's trademarks on the Dispensers or affix any other trademark(s), logo(s) or other mark(s) on any Dispensers.

## Warranty and Repair

6.1 G-P warrants that, for a period of five (5) years from the date of installation of a Dispenser, such Dispenser shall be free from defects in workmanship and materials under normal use with conforming Products; provided, however, Distributor shall, promptly after discovery of any alleged defect, report in writing to G-P the location of the allegedly defective Dispenser, the nature of the defect, and the date of the Lease. Other than this warranty and the Lifetime Satisfaction Program, if applicable, G-P disclaims all other warranties, express or implied, including but not limited to any implied warranties of merchantability or fitness for a particular purpose with respect to Dispensers hereunder.

6.2 If G-P determines that defects in workmanship or material exist in any Dispenser, G-P shall, at its sole option, either repair the defects, replace the Dispenser, or refund the Dispenser Lease Charge paid by Distributor. Distributor expressly acknowledges, understands and agrees that the remedies stated herein are the sole and exclusive remedies to which Distributor is entitled for defects in material or workmanship under the warranty set out in Paragraph 6.1 above.

6.3 Except for the repair or replacement remedy in Paragraph 6.2 above, Distributor agrees that it shall be responsible for all other maintenance and repair of Dispensers and all costs and expenses related thereto.

6.4 G-P shall not be liable for losses, damages, costs or expenses resulting from improper installation, improper use, or abuse of Dispensers by Distributor, any Customer or any third party, or from use of products not designated or authorized by G-P for use in Dispensers. In no event shall G-P be liable to Distributor, under any legal theory or cause of action at law or in equity, for indirect, consequential or incidental damages with respect to the limited warranty in Paragraph 6.1 and/or the corresponding remedy in Paragraph 6.2 or for any other damages or remedies of any kind beyond those provided in this Agreement.

## Termination

7.1. Termination of this Agreement may be accomplished: (a) By either G-P or Distributor with or without cause by giving thirty (30) days advance written notice to the other party; or (b) G-P may terminate this Agreement upon written notice to the Distributor (i) if Distributor breaches any provision of this Agreement; (ii) if Distributor ceases to carry on the business or sells the assets pertaining to the business of distributing paper products, or a third party, other than a party who is an affiliate of Distributor, acquires Distributor's business; (iii) If Distributor becomes insolvent or commences any proceedings or any proceedings are commenced against it under any bankruptcy or insolvency legislation or makes an assignment for the benefit of Creditors; or (iv) if Distributor engages in any activity relating to its performance in violation of any law, rule or regulation or that may adversely impact the goodwill or reputation of the Products of G-P, or (v) if G-P, in its sole discretion, determines that termination is in its best interest.

7.2 Upon any termination of this Agreement: (a) Distributor shall immediately discontinue the installation of any Dispenser in its inventory and send all records related to the Dispensers to G-P; and (b) within thirty (30) days after the date of termination, at Distributor's option, said Distributor must remove all Dispensers from every Customer location at Distributor's sole cost and expense, to a place or places designated by G-P or Distributor may leave Dispensers at Customer locations for G-P's transfer of the same to the account of another G-P DISTRIBUTOR or some other disposition at G-P's sole discretion, and notify G-P of the number and type of such Dispensers and their specific location(s).

7.3 Notwithstanding the option selected by Distributor in Paragraph 7.2 above, Distributor shall return at their expense all Dispensers in its inventory to G-P within thirty days of the effective termination date. In the event Distributor fails to return Dispensers to G-P, then G-P or its designates may enter the premises where Dispensers are located and take the same into its or their possession without incurring liability to Distributor or any Customer therefor. Distributor agrees that all costs incurred, as a result of removal and shipment shall be borne by the Distributor.

## General Provisions

8.1 Notices. Any notices with regard to Dispensers shall be sent to:

Georgia-Pacific Corporation, North American Commercial Business
133 Peachtree Street, NE
Atlanta, Georgia 30303
Attn.: North American Commercial Marketing Department

8.2 **Assignment.** Distributor may not assign its rights under this Agreement without the prior written consent of G-P, which consent may be arbitrarily withheld. This Agreement will inure to the benefit of and be binding upon respective successors and authorized assigns of the parties hereto.

8.3 **Amendments and Waivers.** Subject to Paragraph 8.7, no modification of or amendment to this Agreement will be valid or binding unless set forth in writing and executed by both parties and no waiver of any breach of this Agreement will be effective or binding unless made in writing and signed by the party purporting to give the same and, unless otherwise provided, will be limited to the specific breach waived.

8.4 **Entire Agreement.** This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof and cancels and supersedes any prior understanding or agreements between the parties.

8.5 **Governing Law.** This Agreement will be governed by and construed in accordance with the laws of the State of Georgia.

8.6 **Severability.** If any provision of this Agreement is unenforceable by or deemed invalid or illegal by a court of competent jurisdiction, the validity of the remaining provisions will not be affected and the rights and obligations of G-P and Distributor to be construed and enforced as if the Agreement did not contain the particular provision deemed invalid or illegal.

8.7 **Agreement Changes.** G-P reserves the unilateral right to alter or amend the terms of its Dispenser Program and this Agreement. Such amendments shall be applicable to all Dispensers leased by G-P after the effective date of said Amendment but are expressly inapplicable to Dispensers shipped by G-P prior to such effective date unless consented to by Distributor. G-P may change the terms of its prices or any addenda that relate to this Agreement at any time.

8.8 **Independent Contractor.** Both parties agree that Distributor is neither an agent nor an employee of G-P and shall at all times occupy the status and position of and be regarded as an independent contractor.

| | |
|---|---|
| WELSH PAPER | Georgia-Pacific Corporation, North American Commercial Business |
| Distributor | |
| By: _(signature)_ | By: _____ |
| (Authorized Signature) | |
| Name: LARRY PADGETT | J. Dan Silk |
| (Print) | Name |
| Title: GENERAL MGR | Vice President, Marketing |
| | Title |
| Address: 12 FRANKLIN PARK AVE | Signature/Effective Date: _____ |
| YOUNGSVILLE | |
| NC 27596 | |
| (City/State)    (Zip) | |

9/12/00

10/10/04 ✓

**EXHIBIT A TO INMOTION BRAND DISPENSING SYSTEM LEASE AGREEMENT**

This Exhibit may be revised at any time upon the mutual agreement of G-P and Distributor. Additional pages may be added as needed.

Approved End-User Accounts ("Customer")

☐ No limitations – Any and all of Distributor's end-user accounts are approved.

OR

☐ Only Distributor's end-user accounts as specified below are approved:

| Name | Location | Date Approved |
|---|---|---|
| | | |



# SUBLEASE REGISTRATION FORM

**Georgia-Pacific**

**North American Commercial Business**

Addendum 1 to Dispensing System Lease Agreement

PLACEMENT DATE
3/5/03

## DISTRIBUTOR INFORMATION

| DISTRIBUTOR NAME | | | |
|---|---|---|---|
| Welsh Paper | | | |

| DSR | ADDRESS | | |
|---|---|---|---|
| Larry Padgett | 112 Franklin Park Dr | | |

| TELEPHONE | CITY | STATE | ZIP |
|---|---|---|---|
| 919.556.6711 | Youngsville | NC | 27596 |

## CUSTOMER INFORMATION

| BUSINESS NAME | LOCATION NAME |
|---|---|
| Mudcat Stadium | |

| ADDRESS | | |
|---|---|---|
| 1501 NC Hwy 39 | | |

| CITY | STATE | ZIP |
|---|---|---|
| Zebulon | NC | 27597 |

| CONTACT NAME | |
|---|---|
| Joe Kramer | |

| TELEPHONE | E MAIL |
|---|---|
| 919.269.2287 | |

## BUSINESS TYPE

| | | |
|---|---|---|
| ☐ C-Stores | ☐ Food Processing | ☐ Lodging |
| ☐ Contract Cleaner | ☐ Food Service | ☐ Manufacturing |
| ☐ Education | ☐ Grocery | ☐ Office Building |
| XX Entertainment/High Usage | ☐ Health Care | ☐ Retail (Malls, etc.) |

| DISPENSER SKU | QUANTITY |
|---|---|
| 59462 | 29 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

## APPROVAL OF SUBLEASE REGISTRATION FORM

Distributor hereby acknowledges that Distributor has delivered a copy of the Sublease Registration Form, which includes Customer's Terms of Use, to the Customer.

| DISTRIBUTOR SIGNATURE | ACKNOWLEDGMENT DATE |
|---|---|
| *[signature]* | 3-5-03 |

**SEE REVERSE FOR CUSTOMER'S TERMS OF USE**

GP 12905 (02/05/2003) Page 1 of 2                    12906.DOC

# CUSTOMER'S TERMS OF USE

### -P Ownership Of Dispensers

he dispensers on the reverse of this form are owned by Georgia-Pacific Corporation, North American Commercial Business (hereinafter ferred to as "G-P") and are leased to the distributor from whom they were obtained (hereinafter referred to as "Distributor") under the terms ? a Dispensing System Lease Agreement entered into between G-P and Distributor. Distributor has been authorized to sublease the spensers to the owner of this facility (hereinafter referred to as "YOU" or "YOUR" as appropriate), at a cost, or at no cost, to YOU. Despite ιy payment for the sublease of the dispensers to Distributor, YOU do not own or have and shall not claim any property interest in the spensers. YOU are authorized to use the dispensers in accordance with the express terms herein. YOU have no right to sublease, lease, sell · otherwise dispose of the dispensers without the express prior written consent of G-P, which may in G-P's sole discretion be withheld.

### equirements For Your Use

YOU are required to permit G-P, Distributor, and their agents and representatives to have reasonable access to the dispensers during regular business hours for the purpose of inspecting, repairing, modifying, exchanging or removing the dispensers, and for this purpose YOU shall allow and provide access to enter upon the premises where the dispensers are located.

YOU are required to use the dispensers for the sole purpose of dispensing, under G-P trademarks, only G-P's branded towel, tissue, soap, air freshener and/or other sanitary dispensed products (collectively "G-P Products") authorized for use in the dispensers and purchased from Distributor.

The use of any towel, tissue, soap, air freshener, and/or other dispensed products in the dispensers other than G-P Products is strictly prohibited, and YOU are required to take all action reasonably necessary to prevent the use of any non-G-P Products in the dispensers.

Neither Distributor nor YOU shall remove or permit others to remove from the dispensers any parts, labels, trademarks, names, logos or other markings, or to tamper with, alter, or add devices to the dispensers, in any manner whatsoever without prior written authorization from G-P, which may be withheld at G-P's sole discretion.

### tight Of Removal And Repossession Of Dispensers

The dispensers will not become fixtures when attached to YOUR property, and YOU may not encumber or allow liens to attach to the dispensers.

Upon demand by either Distributor or G-P, or in the event that YOU fail to comply with any of the above terms or conditions hereof, YOU have thirty (30) days from the date of written notice: (1) either to permit G-P, Distributor, or their agents or representatives to remove the dispensers from YOUR premises during regular business hours at G-P's or Distributor's expense; or, (2) return the dispensers at YOUR expense to the party making the demand.

If YOU fail to comply as provided above within such thirty (30) days, G-P, Distributor, and their agents or representatives, have the right to enter YOUR premises at any time(s) during regular business hours to remove the dispensers without incurring liability for any damage to the premises that was reasonably necessary for such removal.



AUTOMATED TOUCHLESS DISPENSING

# UNTOUCHABLE INNOVATION.




Georgia-Pacific



Motion Activated

Activated



Georgia-Pacific

North American Commercial Business

 **Georgia-Pacific**

Georgia-Pacific Corporation
*Law Department*

133 Peachtree Street NE (30303-1847)
P.O. Box 105605
Atlanta, Georgia 30348-5605
(404) 652-4846
(404) 584-1461 fax
www.gp.com

January 7, 2005

**Emily K. Breslin**
Principal Division Counsel
Consumer Products

<u>VIA FEDERAL EXPRESS, SIGNATURE REQUIRED</u>

Steve von Drehle
President
von Drehle Corporation
612 Third Avneue, NE
Hickory, North Carolina 28601

      Re: In-Motion II Roll Towel

Dear Mr. von Drehle:

Georgia-Pacific is the owner, marketer and distributor of **EnMotion®** towels and dispensers. We have secured the following federal trademark registrations for our EnMotion® line and family of products:

1.     EnMotion® – Registration Number 2834670 for paper towels;
2.     EnMotion® (design) – Registration Number 2738343 for paper towel dispensers;
3.     EnMotion® – Registration Number 2743984 for fixed towel dispenser not of metal; and
4.     EnMotion® – Registration Number 2664519 for paper towel dispensers.

The rights generated by these registrations preclude all other parties from using names which appropriate or are confusingly similar to the EnMotion® registered marks.

It has come to our attention that von Drehle Corporation ("von Drehle") is marketing and selling a new ten-inch paper towel product under Item # 810-B ("810 towel"), targeted for placement in our EnMotion® towel dispensers. We also believe that the von Drehle 810 towel is inferior to GP's EnMotion® towel in quality and could cause consumers to be confused in to believing that the EnMotion towel product is inferior in quality. We also have reason to believe that von Drehle sales staff is communicating to customers that this product may be used in lieu of EnMotion® paper towels in Georgia-Pacific owned EnMotion® towel dispensers.

Our proprietary EnMotion® towel dispensers are the only dispensers on the market that hold ten-inch paper towel rolls. As you are aware, Georgia-Pacific maintains ownership of its EnMotion® dispensers and any attempts to replace or stuff our dispensers with von Drehle's

810 towel is a tortious interference of our contractual obligations with our distributors and end-users. Von Drehle's intent to target our EnMotion® customers is unlawful.

Demand is made that von Drehle immediately cease and desist marketing, selling and distributing the 810 towel, all ten-inch paper towel rolls and any related products for placement on GP's EnMotion® towel dispensers. In addition, GP demands that von Drehle immediately discontinue its unlawful tortious interference activities as it relates to the "stuffing" of 810 towels in GP-owned EnMotion® dispensers. Please communicate your compliance with this demand, in writing, within ten (10) days of the date of receipt of this letter.

This letter does not waive rights to damages accrued by virtue of your infringement and activities prior hereto.

We look forward to hearing from you. Should you have any questions, please contact the undersigned.

Cordially yours,

Emily K. Breslin

cc:    Chandra Houston
       Dan Silk
       John Strom
       Joanne Shufelt

591646

# Patrick • Harper • Dixon

### Attorneys At Law

Of Counsel:
Charles D. Dixon *•

Stephen M. Thomas •
Donald R. Fuller, Jr.
Eloise D. Bradshaw
David W. Hood
Robert Oren Eades
Kimberly H. Whitley
Evans W. Fisher
L. Oliver Noble, Jr. •

Ptolemy T. Allport
Michael J. Barnett
Michael P. Thomas
Sarah M. White

Bailey Patrick *(1898-1989)*
F. Gwyn Harper, Jr.*(1911-1994)*
James T. Patrick *(1936-1990)*

Post Office Box 218
Hickory, NC 28603
RBC Centura Building
34 2ⁿᵈ Street, NW

Telephone (828) 322-7741
Facsimile (828) 322-9340

\* Board Certified Specialist in Estate
Planning and Probate Law
• Certified Mediator

January 12, 2005

Ms. Emily K., Breslin
Principal Division Counsel
Consumer Products Division
Georgia-Pacific Corporation
P.O. Box 105605
Atlanta, Georgia 30348-5605

      Re:    Von Drehle Corporation

Dear Ms. Breslin:

     Steve von Drehle referred your letter of January 7, 2005 to this firm, and we represent Von Drehle Corporation in this matter. In the future, please direct all communications regarding this matter to this law firm.

     We have reviewed your letter, and we have begun to investigate the facts and research the law. We will respond as soon as we are reasonably able.

     To that end, I would also like to request that you clarify your letter for me. You make substantial reference to multiple registered trademarks related to the products you discuss. I do not read your letter, however, to be asserting any claim for infringement on these trademarks. Are you making such a claim? If so, please describe the facts and legal principles that you believe support this claim.

     Thanks in advance for your courtesy. I am,

**Law Dept.**

**JAN 1 4 2005**

**Consumer Products**

Yours truly,

PATRICK, HARPER & DIXON, L.L.P.

Michael P. Thomas

MPT:jg
cc:   Steve von Drehle

Patrick, Harper & Dixon is a Limited Liability Partnership
www.patrickharperdixon.com

# Patrick • Harper • Dixon

## Attorneys At Law

Of Counsel:
Charles D. Dixon **•**

Stephen M. Thomas •
Donald R. Fuller, Jr.
Eloise D. Bradshaw
David W. Hood
Robert Oren Eades
Kimberly H. Whitley
Evans W. Fisher
L. Oliver Noble, Jr. •

Ptolemy T. Allport
Michael J. Barnett
Michael P. Thomas
Sarah M. White

Bailey Patrick *(1898-1989)*
F. Gwyn Harper, Jr.*(1911-1994)*
James T. Patrick *(1936-1990)*

Post Office Box 218
Hickory, NC 28603
RBC Centura Building
34 2nd Street, NW

Telephone (828) 322-7741
Facsimile (828) 322-9340

• Board Certified Specialist in Estate
Planning and Probate Law
• Certified Mediator

January 25, 2005

VIA TELEFACSIMILE

Ms. Emily K., Breslin
Principal Division Counsel
Consumer Products Division
Georgia-Pacific Corporation
P.O. Box 105605
Atlanta, Georgia 30348-5605

     Re:    Von Drehle Corporation

Dear Ms. Breslin:

     Thank you for your patience in regard to this matter. I continue to face several pressing issues on a number of fronts and request your continued patience. Hopefully I'll be able to get back with you sometime this week. Again, sorry for the delay.

     I remain,

          Yours truly,

          PATRICK, HARPER & DIXON, L.L.P.

          Michael P. Thomas

MPT:jg
P.S. I do not have your email address,
but would be happy to correspond with
you in that manner, if you prefer. Mine
is mthomas@phd-law.com

---

# Patrick • Harper • Dixon
## Attorneys At Law

Of Counsel:
Charles D. Dixon **•

Stephen M. Thomas •
Donald R. Fuller, Jr.
Eloise D. Bradshaw
David W. Hood
Robert Oren Eades
Kimberly H. Whitley
Evans W. Fisher
L. Oliver Noble, Jr. •

Ptolemy T. Allport
Michael J. Barnett
Michael P. Thomas
Sarah M. White

Bailey Patrick *(1898-1989)*
F. Gwyn Harper, Jr.*(1911-1994)*
James T. Patrick *(1936-1990)*

Post Office Box 218
Hickory, NC 28603
RBC Centura Building
34 2ⁿᵈ Street, NW

Telephone (828) 322-7741
Facsimile (828) 322-9340

• Board Certified Specialist in Estate
Planning and Probate Law
• Certified Mediator

January 27, 2005

VIA E-MAIL

Ms. Emily K., Breslin
Principal Division Counsel
Consumer Products Division
Georgia-Pacific Corporation
P.O. Box 105605
Atlanta, Georgia 30348-5605

Re:    Von Drehle Corporation

Dear Ms. Breslin:

First of all, thank you for your patience in awaiting this response. In addition to resolving a few other matters, I have taken time to do some preliminary research regarding this dispute. I would like to respond to your letter to Mr. von Drehle of January 7, along with your voice mail message to me last week, by asking you to clarify your position. Based on the limited research I have done so far, I cannot understand what basis Georgia-Pacific has to assert either of the claims you mentioned against our clients, Mr. von Drehle and von Drehle Corporation ("von Drehle"). I would greatly appreciate it if you could enlighten me on your theories, including citations, so that I can see where you are coming from.

In short, I do not understand how von Drehle's conduct constitutes anything other than good, old-fashioned, free-market capitalism. Georgia-Pacific and von Drehle make competing products, and both of them clearly identify their products to the relevant consumers in the marketplace. I would hope that Georgia-Pacific would welcome this competition in the same spirit that von Drehle does.

With regard to your asserting that von Drehle's actions somehow constitute infringement on Georgia-Pacific's trademarks, I don't follow this claim. Upon which of Georgia-Pacific's various trademarks, precisely, do you contend that von Drehle is infringing? Which mark or marks used by von Drehle do you contend are infringing upon Geogia-Pacific's marks? Given that von Drehle is advertising its products under its own name and marks, that the purchasers of the paper towels issue are well aware of the distinction between von Drehle and Georgia-Pacific,

Patrick, Harper & Dixon is a Limited Liability Partnership
www.patrickharperdixon.com
Case 5:05-cv-00478-BO   Document 1   Filed 07/08/05   Page 48 of 62

and that these purchasers are sophisticated, how do you contend that there is any likelihood of confusion among those consumers?

As for your reference to tortious interference with contract, could you explain how von Drehle's sales of paper towels in this context meets the elements of a tortious interference claim? Which contract is von Drehle interfering with, in your view? Furthermore, could you explain how it is that von Drehle's conduct is not justified, or privileged, as competition in the marketplace?

Also, could you explain why Georgia-Pacific's practice of attempting to link the dispensers and the towels does not constitute an illegal tying arrangement under anti-trust law?

Finally, I am not sure I understand exactly what remedy Georgia-Pacific is claiming to be entitled to in this situation. If you own the dispensers at issue, and the license holders are violating their obligation to you, shouldn't you just withdraw the dispensers? Could you explain what remedy you intend to seek?

As I have said, I don't understand your claims, but I would be happy to review your explanation. I look forward to your response.

I remain,

Yours truly,

PATRICK, HARPER & DIXON, L.L.P.

Michael P. Thomas

MPT:jg
cc:    Steve von Drehle (via e-mail)

# Patrick • Harper • Dixon

## Attorneys At Law

Of Counsel:
Charles D. Dixon *•

Stephen M. Thomas •
Donald R. Fuller, Jr.
Eloise D. Bradshaw
David W. Hood
Robert Oren Eades
Kimberly H. Whitley
Evans W. Fisher
L. Oliver Noble, Jr. •

Ptolemy T. Allport
Michael J. Barnett
Michael P. Thomas
Sarah M. White

Bailey Patrick (1898-1989)
F. Gwyn Harper, Jr.(1911-1994)
James T. Patrick (1936-1990)

Post Office Box 218
Hickory, NC 28603
RBC Centura Building
34 2nd Street, NW

Telephone (828) 322-7741
Facsimile (828) 322-9340

* Board Certified Specialist in Estate
Planning and Probate Law
• Certified Mediator

March 7, 2005

Ms. Emily K., Breslin
Principal Division Counsel
Consumer Products Division
Georgia-Pacific Corporation
P.O. Box 105605
Atlanta, Georgia 30348-5605

      Re:   Von Drehle Corporation

Dear Emily:

      I know you stated in one of your voice mails to me that you prefer to speak on the phone, however my schedule this week is busy and I thought I would rather get back to you today by letter than wait until we could talk.

      You stated in your second voice mail message to me Friday afternoon that to your knowledge Georgia-Pacific's enmotion dispenser is the only dispenser available on the market that accept 10-inch towels. I write to inform you that this is no longer true. Von Drehle now offers a 10-inch hard wound roll towel dispenser which is to be used with Von Drehle's Number 810B towel. This dispenser will be sold as Von Drehle's Item Number 28810. As such, it is no longer true that Georgia-Pacific has the only 10-inch towel dispenser on the market. Furthermore, as far as I am aware, having towels of the length of 10 inches does not give rise to any intellectual property rights to Georgia-Pacific. In fact, to the extent you are attempting to preclude Von Drehle from offering a 10-inch towel on the market, I would submit that your conduct is anti-competitive.

      You also referred in your letter to Georgia-Pacific's retaining ownership over its dispensers and desire to preserve what you refer to as Georgia-Pacific's contractual rights. If you believe that your customers are violating their contracts with you, perhaps you should pursue your contractual remedies against these customers.

      With regard to the legal arguments surrounding this situation, I would like to clarify my earlier statements. In one of your messages I believe that you referred to "rhetorical questions" that I had asked in my letter to you of January 27. If my letter to you appeared to be asking rhetorical

questions, I apologize. If you perceived that I was attempting to get you to do research for me, I apologize. I have performed a fair amount of research on these issues, and, although I can't claim to have the intellectual property law knowledge that I am sure you possess, I have had some experience with these issues before. I take Georgia-Pacific's position on this situation very seriously. My research showed me that my client's conduct constitutes competition in the marketplace and is not infringing on Georgia-Pacific's intellectual property rights or interfering with its contracts in any illegal way. If you have research that indicates otherwise, I am more than happy to look at it. For example, you have made several references to litigating these issues before, and I believe you referred to litigating them successfully for your client. I would be happy to review any published opinions resulting from this litigation that you feel supports your position. Likewise, I would be happy to review any other published opinions that you feel support your position. I have not been able to locate either. If I am missing something, I would certainly appreciate it if you would share it with me before sending our clients down the path of expensive and protracted litigation.

Again, let me apologize if my prior letter was not received in the spirit it was intended. I am open to considering Georgia-Pacific's position in this matter, once I understand the basis for its legal conclusions more clearly. Particularly in light of the introduction of another 10-inch towel dispenser into the market, my analysis of the situation leads me to believe that my client is competing fairly. If your analysis leads you to a different conclusion, Von Drehle would be more than happy to reconsider its conclusion, once it has seen the basis for your analysis.

I look forward to your response. I hope you are enjoying your vacation. As always, I remain,

Yours truly,

PATRICK, HARPER & DIXON, L.L.P.

Michael P. Thomas

MPT:jg
cc:     Steve von Drehle



# Dispenser Products

PRODUCTS   WHAT'S NEW   ABOUT US   CONTACT US   PRODUCT COMPARISON GUIDE   LITERATURE   MAIN PAGE

**Special Notes**
› Product Comparison Guide

Coordinated Dispensers for Every Site, Every Use
von Drehle dispensers are engineered and constructed to provide years of dependable service under all conditions. Our tasteful designs fit equally well in the most elegant office or the roughest industrial site.



- • Translucent covers for easier monitoring
- • Tight-sealing
- • Lockable to deter vandalism
- • Durable, impact-resistant
- • Custom identity available

› Center Pull Towel Dispensers
› Jumbo Roll Tissue Dispensers
› Folded Towel Dispensers
› Hardwound Towel Dispensers
› Twin Standard Roll Tissue Dispensers
› Mini-Twin Porta-Roll Tissue Dispensers

**Take Me To...**

612 Third Avenue NE • Hickory, NC 28601-5164
• 828-322-1805 • 800-438-3631
©1998-2003 • sales@vondrehle.com



# Center Pull Towel Dispensers

PRODUCTS   WHAT'S NEW   ABOUT US   CONTACT US   PRODUCT COMPARISON GUIDE   LITERATURE   MAIN PAGE

**Special Notes**
› Center Pull Dispenser Ad

› Center Pull Towel Dispenser
Feature & Benefit Information

› Product Comparison Guide

**Center Pull Towel Dispensers**
von Drehle's innovative center pull dispenser system (patent pending) eliminates double feeding by dispensing a single towel at a time. This unique, water-tight dispenser accommodates all standard center pull towels up to 9" wide/ 9" diameter. This system meets HACCP requirements.

**Mini-Center Pull Towel Dispensers**
Our new Mini-Center Pull Towel Dispenser is ideal for use where space is limited. Accepts 1- and 2-ply toweling. Available in black (2626) and white (2626W).



Item #6622

| ITEM# | COLOR | ITEMS/CASE | CONE TYPE | NOTES |
|---|---|---|---|---|
| 6622 | Black | 2 | #2 | |
| 80BBW | White | 2 | #1 | |
| WR662 | Black | 2 | #2 | Water-resistant |
| WR80B | White | 2 | #1 | Water-resistant |
| 2626 | Black | 1 | Adjustable | |
| 10292 | Black | 2 | Adjustable | |
| 2RLSS | Stainless Steel | 1 | 2 | |



Item #2626

**Take Me To...**

612 Third Avenue NE • Hickory, NC 28601-5164 • 828-322-1805 • 800-438-3631
©1998-2003 • sales@vondrehle.com



# Jumbo Roll Tissue Dispensers

PRODUCTS    WHAT'S NEW    ABOUT US    CONTACT US    PRODUCT COMPARISON GUIDE    LITERATURE    MAIN PAGE

**Special Notes**
› Product Comparison Guide

## Jumbo Roll Tissue Dispensers

von Drehle's jumbo roll tissue dispensers are perfect for high-traffic areas. These virtually indestructible dispensers easily accommodate all core sizes and roll dimensions on the market today.



| ITEM# | COLOR | ITEMS-CASE | PHOTO ID |
|-------|-------|-----------|----------|
| AE42V | Black | 4 | A |
| 31002 | Black | 2 | B |
| 3253 | Black | 4 | C |
| 3253W | White | 4 | C |
| 3200 | Black | 4 | D |
| 3200W | White | 4 | D |

Jumbo Roll Dispensers

**Take Me To...**

612 Third Avenue NE • Hickory, NC 28601-5164 • 828-322-1805 • 800-438-3631
©1998-2003 • sales@vondrehle.com



# Folded Towel Dispensers

PRODUCTS    WHAT'S NEW    ABOUT US    CONTACT US    PRODUCT COMPARISON GUIDE    LITERATURE    MAIN PAGE

Special Notes
› Product Comparison Guide

Folded Towel Dispensers
This high-capacity dispenser is designed to accept both multi-fold and C-fold towels. The durable construction features a metal back and translucent cover.



#175AO

| ITEM# | COLOR | ITEMS CASE | NOTES |
|-------|-------|------------|-------|
| 175AO | Black | 6 | |

Take Me To...

612 Third Avenue NE • Hickory, NC 28601-5164 • 828-322-1805 • 800-438-3631
©1998-2003 • sales@vondrehle.com

http://www.vondrehle.com/foldedtoweldispenser.html                    7/7/2005



# Hardwound Towel Dispensers

PRODUCTS   WHAT'S NEW   ABOUT US   CONTACT US   PRODUCT COMPARISON GUIDE   LITERATURE   MAIN PAGE

**Special Notes**
› Product Comparison Guide

## Hardwound Towel Dispensers

Our most popular hardwound towel dispenser, #3467, incorporates a unique push-bar dispensing system for easy use. The automatic stub-roll transfer feature eliminates waste and reduces run-out. Dispenser #19067 is an economical crank dispenser with a heavy-gauge metal back and durable transparent plastic front. Both dispensers accept rolls up to 8" wide / 8" diameter.

| ITEM# | COLOR | ITEMS/CASE | PHOTO ID |
|-------|-------|------------|----------|
| 3467 | Black | 1 | Push-bar |
| 19067 | Black | 1 | Crank Type |
| 2257 | Black | 1 | Hands-free Electronic Dispenser |



Item #3467



Item #19067



Item #2257

Take Me To...

612 Third Avenue NE • Hickory, NC 28601-5164 • 828-322-1805 • 800-438-3631
©1998-2003 • sales@vondrehle.com



# Twin Standard Roll Tissue Dispensers

PRODUCTS    WHAT'S NEW    ABOUT US    CONTACT US    PRODUCT COMPARISON GUIDE    LITERATURE    MAIN PAGE

Special Notes
› Product Comparison Guide

**Twin Standard Roll Tissue Dispensers**
Our twin standard roll dispenser is perfect for low-traffic or space-restricted areas. The dispenser eliminates tissue waste by preventing access to the upper roll before the lower roll is depleted.

| ITEM# | COLOR | ITEMS/CASE | NOTES |
|-------|-------|-----------|-------|
| 25000 | Black | 6 | |



#25000

**Take Me To...**

612 Third Avenue NE • Hickory, NC 28601-5164 • 828-322-1805 • **800-438-3631**
©1998-2003 • sales@vondrehle.com

http://www.vondrehle.com/standardrolltissuedispenser.html
7/7/2005



# Mini-Twin Porta-Roll Tissue Dispensers

PRODUCTS     WHAT'S NEW     ABOUT US     CONTACT US     PRODUCT COMPARISON GUIDE     LITERATURE     MAIN PAGE

Special Notes
› Product Comparison Guide

Mini-Twin Porta-Roll Tissue Dispensers
A mini-twin dispenser is available from von Drehle so the Porta-Roll can also
be used in new installations. Use with products #PR940 and #PR470. A
matching mini-center pull dispenser is available, making this a great package
for front office, healthcare and similar applications. The mini-twin dispenser is
available in white or black.



Mini-Twin Porta-Roll Tissue Dispensers

| ITEM# | COLOR | ITEMS/CASE | NOTES |
|-------|-------|------------|-------|
| 3200 | Black | 4 | |
| 3200W | White | 4 | |

Take Me To...

612 Third Avenue NE • Hickory, NC 28601-5164 • 828-322-1805 • 800-438-3631
©1998-2003 • sales@vondrehle.com









